**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff,*

v.

LENOVO GROUP LIMITED, LENOVO PC HK LTD., LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO (BEIJING) LIMITED, MOTOROLA MOBILE COMMUNICATION TECHNOLOGY LTD., and MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION COMPANY LIMITED,

*Defendants.*

Case No. 2:25-cv-00837-JRG-RSP

**JURY TRIAL DEMANDED**

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c) FOR LACK OF CONSTITUTIONAL STANDING**

## TABLE OF CONTENTS


**Page**

INTRODUCTION ... 6

I. STATEMENT OF THE ISSUES TO BE DECIDED ... 7

II. FACTUAL BACKGROUND ... 7

A. The MLA ... 8

B. Empire Has No Rights With Respect to the ’120 Patent ... 10

C. Empire Either [redacted] or Never Had Any Rights to the Patent ... 12

III. LEGAL STANDARD ... 13

A. Rule 12(c) Is the Proper Vehicle to Challenge Standing, and the Court Must Dismiss if Empire Cannot Demonstrate Constitutional Standing ... 13

B. Interpretation of License Agreements Under Texas Law ... 14

IV. ARGUMENT ... 15

A. Empire Lacks Standing to Assert the ’120 Patent Because Its Alleged Predecessor-in-Interest IDMC Never Acquired and Thus Never Conveyed to Empire Any Rights to the Patent ... 16

B. Empire Lacks Standing to Assert the ’120 Patent Because No Written Instrument Transferred Patent Rights to IDMC or Empire ... 18

C. In the Alternative, If the Court Finds Empire May Have Standing, UT and/or IDMC Must Be Joined as Required Parties Under Rule 19, or This Action Must Be Dismissed ... 20

D. Empire Lacks Standing to Assert the '331 Patent Because It Either [redacted] or Never Had Rights to the Patent ... 21

E. The Prior Samsung Ruling Does Not Preclude This Motion ... 24

V. CONCLUSION ... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
626 F.3d 1213 (Fed. Cir. 2010) .......... 20

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) .......... 14, 25

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed. Cir. 1991) .......... 19

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) .......... 14

*Barbier v. Barry*,
345 S.W.2d 557 (Tex. App. 1961) .......... 22

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009), aff'd, 563 U.S. 776 (2011) .......... 26

*Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC*,
573 S.W.3d 198 (Tex. 2019) .......... 18, 22

*E. Montgomery Cnty. Mun. Util. Dist. No. 1 v. Roman Forest Consol. Mun. Util. Dist.*,
620 S.W.2d 110 (Tex. 1981) .......... 17

*Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*,
86 F.4th 667 (5th Cir. 2023) .......... 23

*Empire Technology Development LLC v. Samsung Electronics Co., Ltd.*,
Case No. 2:23-cv-00427-JRG-RSP (E.D. Tex.) .......... 11

*Enzo APA & Son, Inc. v. Geapag A.G.*,
134 F.3d 1090 (Fed. Cir. 1998) .......... 20

*ESN, LLC v. Cisco Sys., Inc.*,
685 F. Supp. 2d 631 (E.D. Tex. 2009) .......... 14

*FilmTec Corp. v. Allied-Signal, Inc.*,
939 F.2d 1568 (Fed. Cir. 1991) .......... 19, 20

*Grady Lee Publishing v. Primedia, Inc.*,
232 F.3d 209, 2000 WL 1273327 (2000) .......... 15

*Hardy v. Johns-Manville Sales Corp.*,
681 F.2d 334 (5th Cir. 1982) .......... 13

*Horn v. State Farm Lloyds*,
703 F.3d 735 (5th Cir. 2012) .......... 15

*Independent Wireless Tel. Co. v. Radio Corp. of Am.*,
269 U.S. 459 (1926) .......... 20

*Intell. Techs. LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) .......... 14, 15, 19, 21

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*,
248 F.3d 1333 (Fed. Cir. 2001) .......... 20

*IpVenture, Inc. v. ProStar Computer, Inc.*,
503 F.3d 1324 (Fed. Cir. 2007) .......... 21

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
650 S.W.3d 392 (Tex. 2022).......... 23

*Jernigan v. Langley*,111 S.W.3d 153 (Tex. 2003).......... 25

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) .......... 14

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) .......... 20

*N. Shore Energy, L.L.C. v. Harkins*,
501 S.W.3d 598 (Tex. 2016).......... 19

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
871 F.2d 1082 (Fed. Cir. 1989) .......... 14

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 14

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) .......... 20

*SCD BLK 251 Houston LLC v. Mt. Jefferson Holdings L.L.C.*,
No. 21-20396, 2022 WL 3647285 (5th Cir. Aug. 24, 2022) .......... 19

*Taylor v. Sturgell*,
553 U.S. 880 (2008).......... 24

*Tekway, Inc. v. Pinnacle Tech. Res., Inc.*,
2024 WL 1826436 (Tex. App. Apr. 26, 2024) .......... 22

*Texas v. Am. Tobacco Co.*,
463 F.3d 399 (5th Cir. 2006) .......... 15, 17

*Two Rivers Pipeline v. Cimarex Energy Co.*,
2020 WL 6379242 (W.D. Tex. Sep. 27, 2020).......... 21

*United States v. Cotton*,
535 U.S. 625 (2002).......... 14

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) .......... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Statutes & Rules**

35 U.S.C. § 261 .......... 19, 25

Fed. R. Civ. P. 12(b)(1) .......... 13

Fed. R. Civ. P. 12(b)(6) .......... 13

Fed. R. Civ. P. 12(c) .......... 6, 13, 25, 26

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(c), Defendants Lenovo Group Limited, Lenovo PC HK Ltd., Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo (Beijing) Limited, Motorola Mobile Communication Technology Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited (collectively, "Defendants") respectfully move for judgment on the pleadings dismissing Plaintiff Empire Technology Development LLC's ("Empire") First Amended Complaint for lack of constitutional standing.

Empire asserts infringement of U.S. Patent Nos. 8,798,120 (the "'120 Patent") and 8,565,331 (the "'331 Patent") (collectively, the "Asserted Patents"). Empire claims to be an exclusive licensee of both Asserted Patents based on a Master License Agreement ("MLA") between the University of Texas ("UT") and the Invention Development Management Company ("IDMC"), Empire's alleged predecessor-in-interest. Empire alleges that IDMC later assigned its exclusive license to Empire. But the undisputed documentary record—including the MLA, correspondence from UT, and Empire's own written communications—demonstrates that Empire holds no rights in either patent.

But the face of Empire's own First Amended Complaint and the documents incorporated therein demonstrate that Empire lacks constitutional standing to assert either of the Asserted Patents. With respect to the '120 Patent, there is [redacted]. The MLA outlined specific steps IDMC had to follow to select an invention and notify UT of that selection to obtain an exclusive patent license. IDMC never made such a selection for the '120 Patent. Without rights to the '120 Patent, IDMC could not have assigned any to Empire.

With respect to the ’331 Patent, Empire [redacted].

Because Empire lacks constitutional standing to sue on the Asserted Patents, this Court lacks subject matter jurisdiction and the Defendants’ motion should be granted.

## I. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Empire lacks constitutional standing to sue on the ’120 Patent because its predecessor never selected that patent as a licensed patent under the Master License Agreement, and therefore never acquired any rights to that patent.

2. Whether Empire lacks constitutional standing to sue on the ’331 Patent because it is not licensed to and has no rights to that patent—it either [redacted] or it never acquired any rights to it because there is no proof Empire’s predecessor complied with the MLA’s notice provision.

## II. FACTUAL BACKGROUND

Empire filed this patent infringement action on August 21, 2025, asserting the two Asserted Patents against the Defendants. Dkt. 1. Empire subsequently filed its First Amended Complaint on January 21, 2026.[1] Dkt. 41. Empire alleges that it is an exclusive licensee of both Asserted Patents and has such rights pursuant to the MLA between IDMC and UT. Dkt. 41 ¶¶ 26–30. Empire also

[1] The facts set forth herein are supported by the Declaration of Shawnna M. Yashar in Support of the Defendants’ Motion for Judgment on the Pleadings for Lack of Constitutional Standing, filed concurrently herewith, and the exhibits attached thereto (cited herein as “Ex. __”).

alleges that it subsequently acquired an exclusive license from IDMC pursuant to an Assignment and Assumption Agreement ("Assignment"). Dkt. 41 ¶ 30; Ex. 1 (Assignment).

### A. The MLA

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## B. Empire Has No Rights With Respect to the ’120 Patent

According to the MLA, to become an exclusive licensee to a UT patent, IDMC needed to [redacted]

In *Empire Technology Development LLC v. Samsung Electronics Co., Ltd.*, Case No. 2:23-cv-00427-JRG-RSP (E.D. Tex.) (the "Samsung Litigation"), [redacted]

[redacted]

On June 5, 2017, Empire and IDMC entered into an Assignment and Assumption Agreement ("Assignment"), under which [redacted]

[redacted].

### C. Empire Either [redacted] or Never Had Any Rights to the Patent

Empire produced [redacted]

Even assuming that IDMC was initially licensed to the ’331 Patent—and transferred that license and its rights to Empire through the June 5, 2017 Assignment—Empire [redacted]

[redacted]

[redacted]

Empire withheld this critical communication from its production in the Samsung Litigation, and Samsung was forced to obtain it from UT. [redacted]

## III. LEGAL STANDARD

### A. Rule 12(c) Is the Proper Vehicle to Challenge Standing, and the Court Must Dismiss if Empire Cannot Demonstrate Constitutional Standing

A Rule 12(c) motion is the proper vehicle to challenge subject matter jurisdiction after the close of pleadings. *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Id.* However, when a Rule 12(c) motion challenges standing—and thus subject matter jurisdiction—the Court applies the same standard as under Rule 12(b)(1). A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks

standing to bring the claim. Subject matter jurisdiction cannot be waived, and a court is obligated to examine its jurisdiction *sua sponte*. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

"Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010). To establish Article III standing, a plaintiff must show "that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). In a patent case, "the question for the injury-in-fact threshold is whether a party has ***an*** exclusionary right." *Intell. Techs. LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024) (emphasis in original).

"The burden of demonstrating standing falls to Plaintiff." *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 639 (E.D. Tex. 2009). "[N]o presumptive truthfulness attaches to plaintiff's allegations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). This Court may consider matters outside of the pleadings in resolving whether subject matter jurisdiction exists. *ESN*, 685 F. Supp. 2d at 639–40. When ruling on a motion challenging standing, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by disputed facts that the Court has resolved. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Interpretation of License Agreements Under Texas Law

Patent license agreements are governed by ordinary principles of state contract law. *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989). Under Texas law, the Court must "first look to the plain language of the contract to determine whether it is

ambiguous." *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012). If a contract is unambiguous, the Court must apply its plain meaning and enforce it as written. *Id.* "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006).

## IV. ARGUMENT

To have constitutional standing to sue, Empire had to hold at least "an exclusionary right" in the asserted patents at the time it filed suit. *Intell. Techs. v. Zebra*, 101 F.4th at 814. It did not. Empire cannot meet its burden to show standing because it cannot show it possessed any rights—let alone an exclusionary right—in either one of the patents when it filed this case. "Article III standing is a jurisdictional requirement, which is incurable if absent at the initiation of suit." *Id.* Empire may argue that the parties' subsequent conduct—such as payments, patent filings, or maintenance fees—demonstrates that the rights were effectively transferred. But such conduct cannot cure a failure to satisfy the MLA's unambiguous contractual requirements for acquiring rights in a patent. The Fifth Circuit has held, extrinsic evidence—including course of conduct—cannot be used to interpret an unambiguous contract. *See Grady Lee Publishing v. Primedia, Inc.*, 232 F.3d 209 (Table), 2000 WL 1273327 (2000) ("If a contract is unambiguous, extrinsic evidence regarding the parties' course of performance may not be used to interpret the contract's terms.") The Fifth Circuit noted this rule is "quite settled" under Texas law[2], citing the Texas Supreme Court's holdings that "the conduct of the parties is ordinarily immaterial in the determining of the meaning of an unambiguous instrument." *Id.* [redacted]nd

---

2 [redacted]

[redacted]

### A. Empire Lacks Standing to Assert the '120 Patent Because Its Alleged Predecessor-in-Interest IDMC Never Acquired and Thus Never Conveyed to Empire Any Rights to the Patent

Empire does not possess any rights in the '120 Patent, let alone an exclusionary right. The record contains no evidence supporting Empire's claim that it is an exclusive licensee to the '120 Patent, as alleged in the First Amended Complaint. Dkt. 41 ¶¶ 26–30. Empire relies on the MLA between UT and IDMC, Empire's predecessor-in-interest, to assert that it is an exclusive licensee by virtue of an assignment agreement executed with IDMC in 2017. *Id.* ¶ 30. But while Empire's assignment agreement with IDMC purports to transfer all of IDMC's patent rights to Empire, IDMC held no rights concerning the '120 Patent at the time of the alleged transfer.

IDMC acquired no rights to the '120 Patent under the MLA. The MLA required IDMC to [redacted] Therefore, the record contains no evidence that IDMC obtained an exclusive license or any other right to the '120 Patent under the MLA, and thus Empire could not have obtained such rights from IDMC.

Moreover, to the extent Empire argues that Amendment 2 to the MLA created an alternative mechanism for IDMC to license an invention, Empire is incorrect. [redacted]

Additionally, should Empire argue that the parties' conduct demonstrated an intent for the '120 Patent to be licensed, that too is insufficient. Texas law is clear: when a contract is unambiguous, "[c]ourts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d at 407. Similarly, "[t]he conduct of the parties is only relevant after the court has determined that the contract is ambiguous." *E. Montgomery Cnty. Mun. Util. Dist. No. 1 v. Roman Forest Consol. Mun. Util. Dist.*, 620 S.W.2d 110, 112 (Tex. 1981). And "[w]here contracts are

unambiguous, [courts] decline to consider the parties' course of performance to determine its meaning." *Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 206 (Tex. 2019). Here, the MLA is unambiguous, and even Empire has acknowledged as much. There is no ambiguity to resolve by reference to conduct. [redacted] No amount of subsequent conduct—whether payments, patent filings, or informal communications—can override this unambiguous contractual requirement. Any argument that IDMC's or Empire's conduct should be considered to establish patent rights is therefore legally irrelevant and must be rejected.

**B. Empire Lacks Standing to Assert the '120 Patent Because No Written Instrument Transferred Patent Rights to IDMC or Empire**

There is no evidence that UT and IDMC entered into any agreement outside of the MLA granting IDMC rights to the '120 Patent. [redacted]

[redacted] Under Texas law, "an option contract at bottom requires an enforceable underlying

contract." *SCD BLK 251 Houston LLC v. Mt. Jefferson Holdings L.L.C.*, No. 21-20396, 2022 WL 3647285, at *4 (5th Cir. Aug. 24, 2022). [redacted] *SCD BLK*, 2022 WL 3647285, at *4 (holding that when "the underlying 'contract' is simply more negotiations," "[t]he agreement lack[ed] the material terms necessary for an enforceable agreement and is instead an unenforceable agreement to agree."). [redacted]

Moreover, "[a]n option agreement does not pass title or convey an interest in property." *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 606 (Tex. 2016). Thus, even if the option contract is valid, the underlying agreement "is not binding until accepted." *Id.* [redacted] As the Federal Circuit recently held, an "unexercised option to assign . . . was not a . . . divestment of [patent owner's] exclusionary rights." *Intell. Techs. v. Zebra*, 101 F.4th at 817. [redacted].

Furthermore, under 35 U.S.C. § 261, "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." The Federal Circuit has consistently held that patent rights can be transferred only through a written instrument. *See, e.g., FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991). [redacted]

[redacted]. *See FilmTec*, 939 F.2d at 1572 (concluding that if the inventor had previously assigned the patent-in-suit, "then [the inventor] had nothing to give to [plaintiff] FilmTec and his purported assignment to FilmTec is a nullity"); *see also Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("one cannot convey what one does not own").

Because Empire had no rights to the '120 Patent when it filed suit, it lacks constitutional standing, and its infringement claim for the '120 Patent should be dismissed.

### C. In the Alternative, If the Court Finds Empire May Have Standing, UT and/or IDMC Must Be Joined as Required Parties Under Rule 19, or This Action Must Be Dismissed

Even if the Court determines that Empire possesses some interest in the '120 Patent, that interest is, at best, an exclusive license under the MLA—not an assignment of all substantial rights. Where a patent owner retains substantial rights, the patent owner is a required party that must be joined under Rule 19. *See Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007); *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001).

The Federal Circuit has explained that "[a]n exclusive licensee normally lacks the right to sue unless it joins the patent owner in the suit." *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010). "[A]n exclusive licensee who holds fewer than all substantial rights in a patent must join the patent owner in any infringement suit." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc). [redacted]. UT has not been joined as a party to this action.

Similarly, if the Court finds that IDMC's assignment to Empire was incomplete or defective, IDMC must be joined as a required party. *See IpVenture, Inc. v. ProStar Computer, Inc.*,

503 F.3d 1324, 1345 (Fed. Cir. 2007) (affirming dismissal where the exclusive licensee failed to join the patent owner). If joinder of UT and/or IDMC is not feasible, this action must be dismissed. *See Two Rivers Pipeline v. Cimarex Energy Co.*, 2020 WL 6379242, at *3 (W.D. Tex. Sep. 27, 2020) (dismissing where required party could not be joined).

### D. Empire Lacks Standing to Assert the '331 Patent Because It Either [redacted] or Never Had Rights to the Patent

At the time it filed suit, Empire also lacked constitutional standing concerning the ’331 Patent. To the extent Empire received any rights to the ’331 Patent through the 2017 assignment from IDMC, [redacted] Without an exclusionary right to the patent at the beginning of the suit, Empire's infringement claim based on the ’331 Patent should also be dismissed. *See Intell. Techs. v. Zebra*, 101 F.4th at 814.

[redacted]

[redacted]

Under the MLA, [redacted] (emphasis added)).

In the Samsung case, Empire contended that the [redacted] was sent "in error." But this self-serving assertion is not credible and fails to satisfy Empire's burden, given the written record. *See Barbier v. Barry*, 345 S.W.2d 557, 563 (Tex. App. 1961) (holding that a party's unilateral mistake does not vitiate a binding contractual notice absent fraud or inequitable conduct by the other party). Under Texas law, a party's unilateral mistake in exercising a contractual right is insufficient to invalidate the exercise of that right. *See Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 207 (Tex. 2019) (declining to consider course-of-performance evidence where the parties agreed the contracts were unambiguous and enforcing the contractual allocation of rights according to the agreement text). If this were truly an "error," Empire presumably would have promptly taken steps to correct it. But no subsequent communications or other evidence support the "error" claim, and [redacted] Under Texas law, a written notice validly exercising a contractual right cannot be withdrawn by a party's after-the-fact claim that it was a mistake. *See Tekway, Inc. v. Pinnacle Tech. Res., Inc.*, 2024 WL 1826436, at *5 (Tex. App. Apr. 26, 2024) (holding that email notice terminating contract rights substantially complied

with stricter written notice requirement). Empire cannot be allowed now to claim a mulligan and pretend that such notice, which was decisively explicit and clear, was somehow sent in error.

Empire may also argue that the [redacted]. "The doctrine of substantial compliance excuses a party's deviations from a contractual requirement . . . if those deviations do not severely impair the purpose of the requirement." *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 678 (5th Cir. 2023) (applying Texas law). Specifically, "under Texas law, a party's substantial compliance with contractual notice conditions is sufficient to satisfy those conditions." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 396 (Tex. 2022). The Texas Supreme Court has reaffirmed that "substantial compliance is the appropriate standard when evaluating whether a party complied with a contractual notice condition." *Id.* at 405.

In *Elmen Holdings*, the Fifth Circuit held that an email notice of non-payment of royalties "fulfilled the 'purpose of the [notice] requirement' and substantially complied with" a lease that required notice "delivered in person or . . . posted by certified or registered mail," because the email was "received and understood" and "unequivocally identified the missing royalty payment." 86 F.4th at 679–80. The court emphasized that "Texas law is clear that notice substantially complies with the terms of a contract even when it is not delivered in the precise manner the contract contemplates." *Id.* at 679. Similarly here, Empire's [redacted].

Moreover, Empire cannot selectively invoke the written notice provision of the MLA only when it is to its advantage. If Empire argues that the [redacted]. This is precisely the inconsistency that Samsung identified and that Empire cannot avoid: either strict compliance applies across the board, meaning Empire never perfected a license to the ’331 Patent, or substantial compliance suffices, making Empire’s [redacted]. Under either standard, Empire lacks standing to assert the ’331 Patent.

**E. The Prior Samsung Ruling Does Not Preclude This Motion**

Empire may argue that the Court’s prior denial of Samsung’s motion to dismiss in the Samsung Litigation (Dkt. 242) precludes this motion. It does not.

First, the Samsung ruling is not binding on the Defendants. The Defendants were not parties to that proceeding and are not in privity with Samsung. Issue preclusion requires, among other things, that the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue, either as a party to the prior proceeding or through a recognized basis for nonparty preclusion . *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (“A person who was not a party to a suit generally has not had a ‘full and fair opportunity to litigate’ the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the ‘deep-rooted historic tradition that everyone should have his own day in court.’” (internal quotation

marks omitted)). Here, that requirement is not met, and Empire cannot preclude the Defendants from raising the same arguments that Samsung raised.

Second, this motion is brought under Rule 12(c) after the close of pleadings and raises additional arguments not presented in Samsung's motion, including the Rule 19 joinder issue and additional authority regarding the written-instrument requirement under 35 U.S.C. § 261. The factual record has also further developed since the Samsung Litigation ruling. [redacted] Waiver under Texas law requires "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Mere conduct, without express intent to waive a contractual requirement, is insufficient to establish waiver. [redacted]

Third, even if the Samsung ruling were to have some persuasive value, this Court retains full authority to reconsider its prior analysis. Questions of subject matter jurisdiction cannot be waived and may be raised at any time. *See Abraxis Bioscience*, 625 F.3d at 1363; *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009),

aff'd, 563 U.S. 776 (2011) ("It is well settled that questions of standing can be raised at any time."). The Court has an independent obligation to assure itself of its subject matter jurisdiction, and a prior ruling on standing in a different case involving different defendants does not preclude reconsideration where, as here, the jurisdictional defect is apparent from the pleadings and documents of record.

## V. CONCLUSION

For all of the foregoing reasons, Defendants' motion for judgment on the pleadings dismissing Plaintiff Empire's allegations of infringement of the '120 and '331 Patents should be granted. The Court should dismiss this case under Fed. R. Civ. P. 12(c) for lack of constitutional standing.

Dated: June 15, 2026

Respectfully submitted,

*/s/ Shawnna M. Yashar*
Shawnna M. Yashar (D.C. Bar No. 976460)
(Lead Attorney)
syashar@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414

Darin W. Snyder (Cal. Bar No. 136003)
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa Richard Smith (Tex. Bar No. 24001351)
melissa@gillamsmith.com
GILLAM & SMITH, LLP

303 South Washington Ave.
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Counsel for Defendants Lenovo Group Limited, Lenovo PC HK Ltd., Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo (Beijing) Limited, Motorola Mobile Communication Technology Ltd., and Motorola (Wuhan) Mobility Technologies Communication Company Limited*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 15, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: June 15, 2026

*/s/ Shawnna M. Yashar*
Shawnna M. Yashar
O'Melveny & Myers LLP

[redacted]

[redacted]